**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

JAMAHL BRACEY,

                PLAINTIFF,

                                    **VERIFIED COMPLAINT**

-AGAINST-                           **DOCKET NO. _____**

THE CITY OF NEW YORK, POLICE
OFFICER, JONATHAN RUIZ, SGT.
THOMPSON, AND ONE OTHER
UNKNOWN POLICE OFFICER

                            DEFENDANTS,
----------------------------------------------------------X

Now Comes Plaintiff Jamal A. Bracey BY AND THROUGH HIS Attorney Pamela D. Hayes,

Esq. and files his complaint as a _____ A Diversity of Citizenship

Action and various US Civil Rights Statutes.(42 USC § 1983 and 1998)

        PLAINTIFF, brings this action pursuant to 42 U.S.C. Section 1983 and 1998 and New

York State Law for Violations of his Civil Rights of the United States Constitution and Statutes,

as well as those secured by the Constitution of the New York and New York State Statutes, due

to his Wrongful Arrest, False Arrest, Malicious Prosecution, False Imprisonment, Negligent

Infliction of Emotional Distress, Failure to Train, Supervise and Retain NYC Police Officers

caused by their pervasive misconduct. Plaintiff also asserts to supplement State Law claims

against all defendants and as part of this Court's Pendant Jurisdiction over those claims.

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action pursuant to 42 USC Section 1983 and Section 1988 and State

law violations of his Civil Rights as said rights are secured by said statutes and the Constitutions

of the State of New York and the United due to his Wrongful Arrest, False Arrest, Malicious Prosecution, Negligent Infliction of Emotional Distress, Failure to Train, Supervise, and Retain caused by Pervasive misconduct of the City of New York's Police Department. Plaintiff also asserts supplemental state law claims against all defendants as part of this Court's Pendant Jurisdiction.

Plaintiff also files this case under Diversity of Citizenship, as he is a Citizen of the Commonwealth of Virginia.

## PROCEDURAL HISTORY

2.     PLAINTIFF COMPLETED HIS 50H HEARING on October 2018 and then he returned for the transcript of the 50H hearing on November 27, 2018.

3.     Plaintiff was found NOT GUILTY at the Brooklyn N TVB in Brooklyn, New York 11217. The Police were found not to have a sufficient basis for stopping plaintiff for an insufficient turn. (See Plaintiff's exhibit 1).

## JURISDICTION

4.     This action is brought pursuant to 42 U.S.C § 1983 and 42 U.S.C. § 1988, as well as through the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and in violation of the Constitution of the State of New York.

5.     Subject Matter Jurisdiction is founded upon 28 U.S.C §§ 1331, 1332, 1342, and 1343 and 1367, and the 1st, 4th, 5th and 14th amendments of the U.S. Constitution.

6.     The controversy exceeds $75, 000 exclusive of interest and cause.

## VENUE

7.      Venue is properly laid in the Southern District of New York Under Section 28 U.S.C §

1391, Subdivision A and B in that, this is the district in which Defendant resides and Plaintiff is a

Citizen of Alexandra, Virginia.

### JURY DEMAND

8.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to

Federal R.Civ.P. 38, Subdivision (b).

### PARTIES

9.      Plaintiff Jamahl Bracey is an African American male, citizen of the Commonwealth of

Virginia and of the United States all times throughout. Plaintiff Jamahl Bracey is currently a

resident of Alexandria City County, Virginia. His address is 214 N. Patrick Street, Alexandria,

VA. 22314.

10.      Defendant is a Municipal Corporation, residing in the City and State of New York.

### PROCEDURAL HISTORY

11. Plaintiff completed his 50H Hearing in October 2018, and submitted a corrected transcript on

February 12, 2019. He went to a hearing on the Merits of the ticket on November 27, 2018.

Plaintiff was found NOT GUILTY of all charges on that date at the Brooklyn N TVB, in

Brooklyn, New York 11217. (See Plaintiff's exhibit 1).

12.      Defendants were found not to have any probable cause for stopping Plaintiff, at the scene.

13.      The arresting Officer P.O Ruiz testified at the hearing and was found not to be credible

nor to have had a sufficient basis to stop Plaintiff and take him to the police precinct.

14.      That at all times hereinafter mentioned, defendants Ruiz, Thompson, a female PO (last

name unknown) were relevant employees of the New York City Police Department and are being

sued in their individual and official capacity.

15.     That at all times herein mentioned defendants, City of New York and the aforementioned P.O. Ruiz, Sgt. Thompson and the unnamed female officer, were acting under color of state law and not in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York, the City of New York and the Constitution of the State of New York and the Constitution of the United States.

16.     The case arises as a result of the Plaintiff and two black male friends having dinner at a restaurant in Brooklyn, NY called "Woodlawn" located on the 6th Avenue and Flatbush Avenue.

17.     Plaintiff's cousin Trenton Bracey and another individual by the name of Dino L.N.U. The claim arises from a traffic stop by three NYC Police Officers: Officer Ruiz, and two other unnamed officers, one which was a Sergeant Thompson.

18.     After Plaintiff and his cousin left the restaurant, they went to the Plaintiff's car which was parked in front of the restaurant on Flatbush Avenue. Plaintiff made an immediate turn unto 6th Avenue after signaling.

19.     The police were following Plaintiff and after two stop lights, which he stopped at and, the police signaled for Plaintiff to pull over by using their head lights for no apparent reason.

20.     Plaintiff was forced to get out of the car and was asked a series of questions by a Officer Ruiz, which he answered. Plaintiff was asked to take a Breathalyzer and he asked for a basis. Ruiz told Plaintiff he didn't signal, but the police were behind Plaintiff when he turned using his signal and did nothing for about four (4) blocks, even while Plaintiff stopped at two red lights.

21.     Sgt. Thompson came up and injected himself in the confrontation and kept demanding that Plaintiff take a breathalyzer test. Plaintiff's cousin, a retired NYC Police detective, asked Sgt. Thompson to ID himself and was told to stay in the car or he would be "taized."

22.     The female officer and Sgt. Thompson both pulled out their taizers and pointed them at a former police officer and Plaintiff.

23.     Plaintiff was then handcuffed by officer Ruiz, pursuant to the commands of Sgt. Thompson and taken to the 78th Police Precinct. During the arrest there was a female pedestrian walking her dog and voiced her objection to what was happening.

24.     Plaintiff's keys were taken, and his car was driven by the police officers to the precinct. The other passenger and Retired Officer Bracey were forced to walk "in the rain" to the precinct. Plaintiff had given his keys to former Detective Bracey to drive his car. There was no reason for the passengers not to drive, since they both had valid driver's license.

25.     Plaintiff was processed and held in back in a cell. After speaking with retired officer Bracey, the desk sergeant spoke with Plaintiff about what occurred, Sergeant Thompson came back and told Plaintiff he'd have to "blow" in the breathalyzer. Plaintiff told Sgt. Thompson he was uncomfortable. Thompson suggested Plaintiff talk with his cousin and then Plaintiff took the test as it seemed he would not be able to leave without doing so. No one ever mentioned any probable cause as a basis for a stop nor failing to signal.

26.     Thereafter, Thompson continued to harass Plaintiff by asking how many drinks he had. Plaintiff had not received any Miranda Hearing. Plaintiff was then told he could leave and given a ticket for an insufficient signal left turn.

27. Plaintiff has been devastated by this experience. He drove home to Virginia. Sought Counsel, and filed a "Notice of Claim" on March 1, 2018.

28.     Plaintiff went to trail on the manufactured "turn signal" explanation.  The court found that there was an insufficient basis for the stop, "No probable cause and didn't meet their burden. Plaintiff was acquitted on November 27, 2018.

29.     Plaintiff went to a 50H Hearing on October 18, 2018, and filed the corrections on the Errata sheet on February 12, 2019.

30.     Plaintiff files this timely summons and Complaint as a result.

31.     The City of New York is Municipality who is a Citizen of all five (5) counties. Plaintiff files his Complaint in New York County (which is the seat of municipal government) which is in the Southern District of New York.

32.     PO Jonathan Ruiz, is a police officer with the City of New York, who was acting in his official capacity as a police officer. Police Sergeant Thompson, is a police sergeant (First name unknown) who was perform in his official capacity as a police officer.

33.     The female police officer's name is unknown, but she was working with PO Ruiz and Sergeant Thompson on the date in question, and will be ascertained during discovery.

34.     At all times herein mentioned are defendants were acting under the color of the law, to wit, under color of statutes, ordinances, regulations, policies, customs and of the City of New York, State of New York and the Constitution of the United States.

35.     Plaintiff's injuries and damages include, but are not limited to:

   a)  His false and malicious prosecution in traffic court, abuse of process, and false arrest and false imprisonment;

   b)  His loss of his liberty for a total of 4 hours, his emotional injuries of having to attend a traffic court trial and loss of his car.

   c)  Emotional injuries and injuries as a result of his experiences in the entire process of being stopped for no probable cause.

   d)  Past and future mental and emotional injuries and pain and suffering;

e) Legal fees and expenses for which he is responsible in the traffic court case and investigation in excess of ten thousand dollars ($10,000) based upon hours of attorney time necessitated by the vigorous preparation against the Police Department, a pretrial investigation by Counsel, and a trial at the Traffic Violations Bureau.

f) The loss of employment income, and diminution of future earning ability, due to his emotional illness as a result of being, unlawfully stopped and abused by the police.

36.    As a result of the foregoing, Plaintiff sustained monetary damages inter alia, for negligent infliction of emotional duress, embarrassment, humiliation, false arrest, false imprisonment, pain and suffering, deprivation of his State rights, costs, attorney's fees, due to negligence by the City of New York's Police Department. In that they failed to properly train and supervise its employees, as well as emotional duress by Police Officers of the City of New York, in their individual capacities as police officers, and the delineated federal charges.

### FIRST CLAIM FOR RELIEF
### NEGLIGENT HIRING AND RETENTION AND
### NEGLIGENT SUPERVISION AND TRAINING

37.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "36" with the same force and effect as if fully set forth herein.

38.    Upon information and belief, defendants failed to use reasonable care in the hiring, retention and training said defendants.

39.    Defendant City of New York Department knew or should have known in the exercise of reasonable care, the propensities of the defendants to engage in the wrongful conduct heretofore alleged in this complaint.

40.     Upon information and belief, the municipal defendants failed to use reasonable care in training, supervision and retention of Defendants.

41.     As a result of the conduct of Defendants, Plaintiff, Jamahl Bracey sustained, inter alia, emotional distress, embarrassment and humiliation, deprivation of state constitutional rights, punitive and special damages.

42.     All of the foregoing acts by the Defendants deprived plaintiff Jamahl Bracey of federally protected rights, including, but not limited to, the right:

> A. **To be deprived of liberty without due process of law;**
>
> B. **To be free from seizure and arrest not based upon probable cause;**
>
> C. **To be free from unwarranted and malicious traffic and criminal allegations and prosecution;**
>
> D. **To be free from malicious abuse of process;**
>
> E. **To receive equal protection under the law;**

43.     As a result of the foregoing, Plaintiff **Jamahl Bracey** is entitled to compensatory damages against the Municipal Defendant in the sum of $1,000,000.00 (one million dollars) and against individual defendants, in the sum of $300,000.00 (three hundred thousand dollars) each.

## STATE CLAIMS AGAINST MUNICIPAL DEFENDANTS
## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## MALICIOUS PROSECUTION

44.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45.     Defendants provided superior police officers with false information in an attempt to induce the arrest and prosecution.

46.     Defendants importuned the Traffic Violations Bureau to prosecute Plaintiff **Jamahl Bracey** as of November 27, 2018, when he was tried for failing to give traffic signal.

47.     All Defendants were directly and actively involved in the initiation of traffic violation proceedings against Plaintiff **Jamahl Bracey.**

48.     Defendants knew or should have known that there was no probable cause to initiate criminal proceedings against Plaintiff **Jamahl Bracey.**

49.     All Defendants were motivated by **actual malice** in initiating traffic violation proceedings against Plaintiff **Jamahl Bracey.**

50.     Defendants Ruiz, Thompson and unnamed Female officer misrepresented and falsified evidence before the NYC Traffic Violations Bureau.

51.     Defendants refuse to give exculpatory evidence which would have exonerated Plaintiff without the need for a trial.

52.     All Defendants withheld exculpatory evidence from the NYC Traffic Violations Bureau.

53.     Defendant Ruiz was directly and actively involved in the continuation of criminal proceedings against Plaintiff **Jamahl Bracey.**

54.     All Defendants knew or should have known that there was no probable cause to urge the continuation of traffic proceedings against Plaintiff **Jamahl Bracey.**

55.     All Defendants were motivated by actual malice in urging the continuation of the breathalyzer proceedings against Plaintiff **Jamahl Bracey.**

56.     Notwithstanding the Perjurious and fraudulent conduct of Defendants in the Traffic Court proceedings were terminated in Plaintiff Jamahl Bracey's favor on or about November 28, 2018, when all charges against him resulted in a traffic violations judge finding Plaintiff NOT GUILTY.

## THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "56" with the same force and effect as if fully set forth herein. Plaintiff was also not allowed the use of his car after he was arrested.

58.     The aforementioned conduct was extreme and outrageous, and exceeded all bounds of reasonable decency.

59.     The aforementioned conduct was negligent and cause severe emotional distress to Plaintiff **Jamahl Bracey**.

60.     The aforementioned conduct was committed by all defendants while acting within the scope of their employment.

61.     The aforementioned conduct was committed by all defendants while acting in furtherance of their employment with the City of New York.

62.     As a result of the aforementioned conduct, Plaintiff **Jamahl Bracey** suffered severe emotional distress, mental injury, together with embarrassment, public humiliation, shock, fright and loss of freedom.

## FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## NEGLIGENT HIRING, SUPERVISION AND RETENTION

63.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "62" with the same force and effect as if fully set forth herein.

64.     Upon information and belief, defendants failed to use reasonable care in hiring and retention of all Defendants.

65.     Defendants, the City of New York, and the New York Police Department knew, or should have known, in the exercise of reasonable care, the propensities of all Defendants, to engage in the wrongful conduct heretofore alleged in this Complaint.

66.     As a result of the conduct of the Defendant, City of New York, and all individual defendants, Plaintiff Jamahl Bracey sustained, inter alia, emotional distress, embarrassment, and public humiliation, deprivation of his constitutional rights, and punitive special damages.

## FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## NEGLIGENT TRAINING AND SUPERVISION

67.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "66" with the same force and effect as if fully set forth herein.

68.     Upon information and belief, Defendants, the New York Police Department, and City of New York, failed to use reasonable care in the training and supervision of Defendants herein named.

69.     As a result of conduct of Defendants, Plaintiff **Jamahl Bracey** sustained, inter alia, emotional distress, embarrassment, and humiliation, deprivation of his constitutional rights, punitive and special damages.

70.     As a result of the foregoing, Plaintiff **Jamahl Bracey** is entitled to compensatory damages against Defendants, New York Police Department and the City of New York, in a sum to be determined, and is further entitled to punitive damages in the sum of $1,000,000.00 (one million dollars).

## SIXTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE LAW
### (Malicious Prosecution Under State Law; All Defendants)

71.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "70" of this Complaint.

72.     By virtue of the foregoing, the Individual Defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

73.     The criminal proceedings terminated in Plaintiff's favor, by virtue of a NOT GUILTY verdict (November 28, 2018), on all counts.

74.     There was no probable cause for the commencement or the continuation of the traffic proceedings.

75.     The Defendants acted with actual malice.

76.     Defendants and the City of New York are liable under the principle of *respondent superior.*

### SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
#### (*Monell*/42 U.S.C. § 1983: Claim Against Defendant City of New York For the Actions of The City of New York, the named and unnamed Police Officers)

77.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "76" as if fully set forth herein.

78.     The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by the conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who was investigated, arrested, or prosecuted for alleged criminal activities.

79.     Prior to Plaintiff's arrest, policymaking officials at the City of New York Police Department, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial,

implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

(a) The use of excessive promises of rewards and unduly coercive interrogation techniques with vulnerable potential witnesses, including drug users and addict, drug dealers, and/or individuals fearing prosecution and imprisonment for their own personal criminal behavior;

(b) The determination of probable cause to make an arrest; and

*(c)* The continuing duty of police investigators to preserve and to make timely disclosure to the Police Department, during criminal investigation and prosecutions, of all material evidence or information ("*Brady* material") favorable to a person suspected, accused or convicted of criminal conduct, including but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witness has a motive, bias or interest affecting his credibility, or has been pressured or coerced, so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under *Brady*. In this instance the Police never released the results of the breathalyzer.

80.    With respect to "a" and "c" in the preceding paragraph, prior to Plaintiff's arrest and the initiation of his prosecution in 2018, the New York City Police Department provided questionable training[1].

---

[1] The undersigned counsel for the Plaintiff has obtained other cases where they have been liable for failing to train. See Exhibits which will be provided at a later date.

81.     The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant New York City Police Department, including but not limited to, the Police Commissioner or his precinct designee, who knew (or should have known):

> a) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;
>
> b) that such cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and
>
> c) that the wrong choice by such employees concerning such issues will frequently cause a deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

82.     The aforementioned policymaking officials had the knowledge and notice alleged in the preceding paragraph based upon other circumstances:

> a) Civil lawsuits, some of which resulted in substantial civil settlements, credibly alleging that police had falsified, exaggerated, or withheld material evidence, or conducted searches or arrest without probable cause
>
> b) Numerous decisions of the United States Supreme Court, the United States Court of Appeal, and the New York Appellate Division, discussing the difficult issues

that regularly arise under *Brady* as well as the probable cause requirement of the Fourth Amendment;

c) Judicial decisions directly criticizing other Urban police departments for failing to train and supervise officers in their *Brady* obligations and for failing to adopt adequate *Brady* disclosure policies, *see Carter v. Harrison*, 612 F. Supp.749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the Report and Recommendation of US District Court Judge, Shira A. Scheindlin), and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to provide truthful testimony and to disclose evidence that favors criminal defendants under *Brady, see Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992), and *Carter v. Harrison, supra;*

d) The inherent obviousness of the need to train, supervise and discipline police officers in such obligations to counteract the pressure on officers and the powerful incentives they have to close cases and to obtain arrests and convictions.

83.    Under the principles of municipal liability for federal civil rights violations, the City Police Chief (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of *Brady* material.

84.    The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitute a City policymaker for whom the city is liable, with respect to compliance by New York City Police Department employees with the above-mentioned constitutional requirements.

85.     During all time material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the Public.

86.     The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City of New York and the named and unnamed police officers were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

87.     By virtue of the Foregoing, Defendant City of New York, is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries.

### EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
**(*Monell*/42 U.S.C. § 1983: Claim Against Defendant City of New York
For the Actions of The City of New York Police Department)**

88.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "87" as if fully set forth herein.

89.     At the time of Plaintiff's initial prosecution, there was a Mayor and Police Commissioner. As of February 11, 2018, Bill de Blasio was the Mayor and James P. O'Neill was the Police Commissioner of the City of New York, maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and prosecuted in the various Traffic Violations Bureau, including, but not limited to, abuse of process, manufacturing of false evidence and testimony

through giving false evidence, *Brady* violations, reliance on false or misleading evidence and argument at trial ("the policy"), and covering up the same.

90.     This policy began in this instance with the previous elected District Attorney's induction as District Attorney in 2011 and has continued to this day, even with the change of District Attorneys.

91.     The policy permits, encourages, or acquiesces the commission of, constitutional violations of the rights of suspects and defendants by Police. The policy led directly to the violations of Plaintiff's constitutional rights before and during his trial, and the subsequent cover-up of police wrongdoing, which greatly prolonged Plaintiff's wrongful imprisonment and other damages.

92.     More specifically, it was the police of the City of New York to directly encourage, or be indifferent to and thereby indirectly encourage, Police, investigators, and the New York City Police Department. The above law enforcement officials would use the following illegal tactics to coerce witnesses.

93.     In this regard, the three officers on the scene were permitted to refrain from making a record that Plaintiff had passed breathalyzer test.

94.     While prosecutors are told in theory to comply with their Brady Obligations, they were not told there would be any negative consequence to them if they failed to, and in fact there was none.

95.     Upon information and belief, the City of New York Police Department had no employee handbook, manual, or other document setting forth any disciplinary process for such misconduct or potential sanctions for them.

96.     Despite a partial listing (see Exhibit …. of the court decisions, finding that prosecutors had wrongfully failed to disclosed evidence actually or potentially favorable to the defense that should have been disclosed under *Brady, Rosario*, or Statutorily-mandated discovery procedures, or otherwise had engaged in conduct that misled the court, jury, and/or defense, none of the prosecutors involved were disciplined. They were not fired or suspended, fined or demoted. Notations were not placed in their personal files. They were not reported to outside disciplinary bodies. To the contrary, in opposing defendants' efforts to overturn their convictions in such cases, the _____ almost always defended the propriety of his assistants' behavior, thereby ratifying it or at least signaling his tolerance of it.

97.     One case brought before the City of New York during the time period of Plaintiff's prosecution, evidenced the above policy and patterns of misconduct by the Mount Vernon Police Department, and Detective Daniel Ibanez in particular, signaling approval or toleration of such behavior. (See *Ibanez* federal lawsuit, SDNY 2017.)

98.     Courts have condemned the "egregious" behavior of the District Attorney's Offices in "legally" coer[ing] testimony." *Rochin v. California*, 342 U. 165, 172 (1952) (conduct that "shocks the conscience"). "Experience has taught that such reliance offers only chilly comfort to prejudices defendants, no less than to innocent victimized witnesses, and to maintenance of the integrity of the criminal justice process." *Id*

99.     The aforesaid policies, procedures, regulations, practices and/or customs of Defendants City of New York were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and Laws of the United States and in causing his damages.

100.     Under the principles of municipal liability for federal civil rights violations, the Police Commissioner of the City of New York (or his authorized delegates) has final managerial responsibility for training, instructing, supervising and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including, but not limited to, their policies, procedures, customs and practices sufficient to prevent, deter and avoid conduct by their subordinated violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

101.     By virtue of the foregoing, Defendant City of New York (Police Department) is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his resultant injuries.

## STATE CLAIMS AGAINST MUNICIPAL DEFENDANTS
## NINTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## MALICIOUS PROSECUTION

102.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "101" with the same force and effect as if fully set forth herein.

103.     Defendants provided the Traffic Violation Bureau Judges with false information in an attempt to induce the prosecution of Plaintiff **Jamahl Bracey.**

104.     Defendants importuned the Traffic Violations Bureau to prosecute Plaintiff **Jamahl Bracey** as of _____, when he received the charges against him. (See exhibit 2)

105.     All Defendants were directly and actively involved in the initiation of the traffic proceedings against Plaintiff **Jamahl Bracey.**

106.     Defendants knew or should have known there were no probable cause to initiate traffic violation proceedings against Plaintiff **Jamahl Bracey.**

107.   All Defendants were motivated by actual malice in initiating criminal proceedings against Plaintiff **Jamahl Bracey.**

108.   The aforementioned conduct was negligent and caused severe emotional distress to Plaintiff **Jamahl Bracey.**

109.   The aforementioned conduct was committed by all Defendants while acting within the scope of their employment.

110.   The aforementioned conduct was committed by all Defendants while acting in furtherance of their employment with the City of New York City Department.

111.   As a result of the aforementioned conduct, Plaintiff **Jamahl Bracey** suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### TENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW NEGLIGENT HIRING SUPERVISON AND RETENTION

112.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "111" with the same force and effect as if fully set forth herein.

113.   Upon information and belief, defendants failed to use reasonable care in hiring and retention of all Defendants.

114.   Defendants, the City of New York Police Department knew, or should have known, in the exercise of reasonable care, the propensities of all Defendants, to engage in the wrongful conduct heretofore alleged in this Complaint.

115.   As a result of the conduct of the Defendants, City of New York, and all individual Defendants, Plaintiff **Jamahl Bracey** sustained, inter alia, emotional distress, embarrassment, and humiliation, deprivation of his constitutional rights, and punitive special damages.

## ELEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## NEGLIGENT TRAINING AND SUPERVISION

116.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "115" with the same force and effect as if fully set forth herein.

117.    Upon information and belief, defendants and the City of New York Police Department, failed to use reasonable care in the training and supervision of Defendants herein named.

118.    As a result of the conduct of the Defendants, Plaintiff **Jamahl Bracey** sustained, inter alia, emotional distress, embarrassment, and humiliation, deprivation of his constitutional rights, and other delineated rights, punitive and special damages.

119.    As a result of the foregoing, Plaintiff **Jamahl Bracey** is entitled to compensatory damages against defendants, City of New York Police Department, $100,000.00 (one hundred thousand dollars) and is further entitled to punitive damages in the sum of $1, 000,000.00 (one million dollars) each.

WHEREFORE, Plaintiff demands judgment against the municipal Defendant in the sum of $10, 000, 000 (ten million dollars) in compensatory damages, and further demands judgment against Defendants Police Officer Jonathan Ruiz, Sgt. Thompson, and one unnamed female police officer in the sum of $100,000.00 (One Hundred Thousand dollars) each in punitive damages, plus reasonable attorney's fee.

Dated: New York, New York
      August 20, 2020

Pamela D. Hayes, Esq., (PH 2737)
200 57th Street, Suite 708
New York, New York 10019
Tel: (212) 687-8724
Fax: (212) 956-9891
Email: pamhayes7777@gmail.com

TO:    Clerk, United States District Court, SDNY
       All Attorneys for Defendants
       Corporation Counsel for the City of New York
       Department of Law