**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

JAMAHL BRACEY,

                    PLAINTIFF,

                                      **Plaintiff's First Amended COMPLAINT**

-AGAINST-                             **DOCKET NO.  1:20-cv-06768 (MKV)**

                                        **JURY TRIAL DEMAND**

THE CITY OF NEW YORK, POLICE OFFICER
JONATHAN RUIZ, SERGEANT THOMPSON,
AND ONE OTHER
UNKNOWN POLICE OFFICER

                         DEFENDANTS,
------------------------------------------------------X

Now Comes Plaintiff Jamal Bracey BY AND THROUGH HIS Attorney Pamela D. Hayes, Esq.

and files his complaint as a Plaintiff in A Diversity of Citizenship Action complaining of various

New York Statutes and United States Civil Rights Statutes. (42 USC § 1983 and 1988)

       PLAINTIFF brings this action pursuant to 42 U.S.C. Section 1983 and 1988 and New

York State and Constitution Laws for Violations of his Civil Rights under the United States

Constitution and Statutes, due to his Wrongful Arrest, Malicious Prosecution, False

Imprisonment, Negligent Infliction of Emotional Distress, Failure to Train, Supervise and Retain

New York City Police Officers caused by their pervasive misconduct. Plaintiff also asserts to

supplement State Law claims against all defendants and as part of this Court's Pendant

Jurisdiction over those claims.

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action pursuant to 42 USC Section 1983 and Section 1988 and New York State law violations of his Civil Rights as said rights are secured by said statutes and the Constitutions of the State of New York and the United States due to his Wrongful Arrest, False Arrest, False Imprisonment and Malicious Prosecution, Negligent Infliction of Emotional Distress, Defendant's Failure to Train, Supervise, and Retain caused by Pervasive misconduct of the City of New York's Police Department. Plaintiff also asserts supplemental state law claims against all defendants as part of this Court's Pendant Jurisdiction.

Plaintiff files this case under Diversity of Citizenship, as he is a Citizen of the Commonwealth of Virginia.


## PROCEDURAL HISTORY

2.      PLAINTIFF COMPLETED HIS 50H HEARING in October 2018 and returned the transcript of the 50H hearing on November 27, 2018.

3.      Plaintiff was found "NOT GUILTY" at the Brooklyn NTVB in Brooklyn, New York 11217. The Police were found not to have any sufficient basis for stopping plaintiff or for an insufficient turn signal. (See Plaintiff's exhibit 1).


## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C § 1983 and 42 U.S.C. § 1988, as well as through the First, Fourth, Fifth, Sixth Amemdment and Fourteenth Amendments to the United States Constitution and in violation of the Constitution of the State of New York.

5.      Subject Matter Jurisdiction is founded upon 28 U.S.C §§ 1331, 1332, 1342, and 1343 and 1367, and the 1st, 4th, 5$^{th.}$, 6th Amendment and 14th Amendments of the U.S. Constitution.

6.      The controversy exceeds $75, 000 exclusive of interest and cause.

## VENUE

7.      Venue is properly laid in the Southern District of New York Under Section 28 U.S.C § 1391(b)(1), Subdivision A and B in that, this is the district in which Defendant City resides and Plaintiff is a Citizen of Alexandra, Virginia.

## JURY DEMAND

8.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Federal R.Civ.P. 38, Subdivision (b).

## PARTIES

9.      Plaintiff Jamahl Bracey is an African American male, citizen of the Commonwealth of Virginia and of the United States all times throughout. Plaintiff Jamahl Bracey is currently a resident of Alexandria City County, Virginia. His address is 214 N. Patrick Street, Alexandria, VA. 22314.

10.     Defendant is a Municipal Corporation, residing in the City and State of New York, Police Officer Jonathan Ruiz, Sergeant Thompson and one other unknown Police Officer are Defendants in New York Police Department.

## FACTUAL HISTORY

11. Plaintiff completed his 50H Hearing in October 2018 and submitted a corrected transcript on February 12, 2019. He went to a hearing on the Merits of the ticket on November 27, 2018. Plaintiff was found NOT GUILTY of all charges on that date at the Brooklyn N TVB, in Brooklyn, New York 11217. (See Plaintiff's exhibit 1).

12.     Defendants were found not to have any probable cause for stopping Plaintiff or arresting him at the scene.

13.     The arresting Officer P.O Ruiz testified at the hearing and was found not to be credible nor to have had a sufficient basis to stop Plaintiff and take him into police custody and bring him to the 78th Police Precinct.

14.     That always hereinafter mentioned, defendants Police Officer Ruiz, Sergeant Thompson and a female (last name unknown) were relevant employees of the New York City Police Department and are being sued in their individual and official capacity.

15.     That at all times herein mentioned defendants, City of New York and the aforementioned P.O. Ruiz, Sgt. Thompson and the unnamed female officer, were acting under color of state law and not in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York, the City of New York and the Constitution of the State of New York and the Constitution of the United States.

16.     The case arises as a result of the Plaintiff and two black male friends having dinner at a restaurant in Brooklyn, NY called "Woodlawn" located in the vicinity of 6th Avenue and Flatbush Avenue on February 11, 2018 at approximately 11:30pm through the early morning of February 12, 2018 approximately, 4:30am-5am.

17.     Plaintiff was with his cousin Trenton Bracey, a former New York Police Department Police Detective and another individual by the name of Dino L.N.U. The claim arises from a traffic stop by three NYC Police Officers: Officer Ruiz, a Sergeant Thompson and an unnamed female officer.

18.     After Plaintiff, his cousin and his friend Dino (LNU) left the restaurant, they went to the Plaintiff's car which was parked in front of the restaurant on Flatbush Avenue. Plaintiff got into his car with his companions and made an immediate turn unto 6th Avenue after signaling.

19.     The police had been following Plaintiff and had not stopped him even though they had followed him from the restaurant through two stop lights, which Plaintiff had stopped each time. The police signaled for Plaintiff to pull over by using their head lights for no apparent reason.

20.     Plaintiff was forced to get out of the car and was asked a series of questions by a Officer Ruiz, which he answered. Plaintiff was asked to take a Breathalyzer test and when Plaintiff asked for a basis, Ruiz told Plaintiff he didn't signal.

21.     Sgt. Thompson came up and injected himself in the confrontation and kept demanding that Plaintiff take a breathalyzer test. Plaintiff's cousin, a retired New York City Police detective, identified himself to Sgt. Thompson and was told to stay in the car or he would be "tased."

22.     The female officer and Sgt. Thompson both pulled out their taizers and pointed them at Detective Bracey and Plaintiff.

23.     Plaintiff was then handcuffed by Officer Ruiz, pursuant to the commands of Sgt. Thompson and taken to the 78th Police Precinct. During the arrest there was a female pedestrian watching while walking her dog and voiced her objection to what was happening.

24.     Plaintiff's keys were taken and he was handcuffed, and his car was driven by one of the police officers to the precinct. The other passenger and Retired Officer Bracey were forced to walk "in the rain" to the precinct. Plaintiff had given his keys to former Detective Bracey to drive his car. There was no reason for the passengers not to drive, since they both had valid driver's license and it was raining.

25.     Plaintiff was processed and held in a cell in the back of the precinct. After speaking with retired officer Bracey, the desk sergeant discussed what had occurred. Sergeant Thompson went back and told Plaintiff he had to "blow" in the breathalyzer. Plaintiff told Sgt. Thompson he was uncomfortable with doing that since he hadn't been drinking. Thereafter, Sergeant Thompson suggested Plaintiff talk with his cousin and then Plaintiff took the test as it seemed he would not be able to leave without doing so. No officer ever mentioned any probable cause as a basis for a breathalyzer test, or even arresting Plaintiff.

26.     Thereafter, Sergeant Thompson continued to harass Plaintiff by asking how many drinks he had. Plaintiff had not received any Miranda Warnings, thereafter hours passed. Plaintiff was then told he could leave and was given a ticket for "insufficient turn signal". Plaintiff was not given the results of the test.

27. Plaintiff has been devastated by this experience. He drove home to Virginia. Sought Counsel and filed a "Notice of Claim" on March 1, 2018.

28.     Plaintiff went to trial on the manufactured insufficient "turn signal" charge.  The Court found that there was NO basis for the stop, "No Probable Cause and the police didn't meet their burden. Consequently, Plaintiff was acquitted on October 18, 2018. (see exhibit 1)

29.     Plaintiff timely filed this Amended Summons and Complaint with the Court's Permission.

30.     Plaintiff files this timely Summons and Complaint as a result.

31.     The City of New York is a Municipality who is a Citizen of all five (5) counties and the State of New York. Plaintiff files his Complaint in New York County (which is the seat of municipal government) which is in the Southern District of New York and where his Attorney filed his Claim and where he had his 50 H Hearing and his Attorney's Office is located.

6

32.     PO Jonathan Ruiz, is a police officer with the City of New York, who was acting in his official capacity as a police officer. Police Sergeant Thompson, is a police sergeant (First name unknown) who was performing in his official capacity as a police officer supervisor, on the date in question.

33.     The female police officer's name is unknown, but she was working in uniform with PO Ruiz and Sergeant Thompson on the date in question and will be ascertained during discovery.

34.     At all times herein mentioned defendants were acting under the color of the law, to wit, under color of statutes, ordinances, regulations, policies and customs of the City of New York, State of New York and the Constitution of the United States.

35.     Plaintiff's injuries and damages include, but are not limited to:

a)  His false and malicious prosecution in traffic court, abuse of process, and false arrest and false imprisonment;

b)  His loss of his liberty for more than 4 hours, plus his loss of work having to attend the traffic Court Trials.

c)  Emotional injuries and injuries as a result of his experiences in the entire process of being stopped for no probable cause.

d)  Past and future mental and emotional injuries and pain and suffering;

e)  Legal fees and expenses for which he is responsible in the traffic court case and investigation in excess of ten thousand dollars ($10,000) retainer based upon hours of attorney time necessitated by the vigorous preparation against the Police Department, a pretrial investigation by Counsel, and a trial at the Traffic Violations Bureau.

f)  The loss of employment income, and diminution of future earning ability, due to his emotional illness as a result of being, unlawfully stopped and abused by the police.

36.     As a result of the foregoing, Plaintiff sustained monetary damages inter alia, for negligent infliction of emotional distress, embarrassment, humiliation, false arrest, false imprisonment, pain and suffering, deprivation of his State and Federal Civil rights, costs, attorney's fees, due to negligence by the City of New York's Police Department, in that they failed to properly train and supervise its employees, as well as emotional duress by Police Officers of the City of New York, in their individual capacities as police officers, and the delineated federal charges. Plaintiff also alleges that he was stopped because of his race and nothing else.

**FIRST CLAIM FOR RELIEF**
**NEGLIGENT HIRING AND RETENTION AND**
**NEGLIGENT SUPERVISION AND TRAINING AGAINST THE CITY OF NEW YORK**

37.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "36" with the same force and effect as if fully set forth herein.

38.     Upon information and belief, defendants failed to use reasonable care in the hiring, retention and training said defendants.

39.     Defendant City of New York Department knew or should have known in the exercise of reasonable care, the propensities of the defendants to engage in the wrongful conduct heretofore alleged in this complaint, as it had been the subject of a sorted history between the New York Police and African American males being stopped for no reasons. Floyd v. City of New York, et al., was a class action, which was tried in the Southern District of New York, where members of the minority communities (African American, Latino and Asian sued the City of New York over illegal stop and frisk activity for no apparent reason except that they were member of these minority groups.   Plaintiffs showed that they were not performing any illegal activity but were

being treated as if they were. They also offered expert statistics to show the disproportionate amount of minorities who fell prey to this illegal policy. Since this was a class action the class represented numerous individuals (thousands). It can be described as a seminal case and the Court had over whelming examples of the City's Police Department engaging in lack of probable cause or stopping individuals without any reasonable suspicion to harass members of the City's minority community for an illegal basis (Race) Consequently, the City entered into a settlement (consent decree) and had to pay out large numbers of monetary settlements for their misapplication of the City's laws as well as the State of New York's and United States Constitutions.  This had been an ongoing issue and it was not until the Court found for the Plaintiffs that their policy changed and the City's Police Department started to something to address these discriminatory practices.  In this instance, the policy changes still were not filtering down to the individual police officers and their supervisors who continued to engage in these practices of the past by willfully ignoring what the Officers were still doing or by participating in activities themselves as supervisors that they clearly knew was illegal.

40.    In this instance, the Municipal Defendant failed to use the amount of care that was necessary to establish that they had the proper training.  This particular incident happened to Plaintiff, who is a Black male Citizen of the Commonwealth of Virginia.  In addition to being a law-abiding citizen, Plaintiff works as an engineer for the United States Department of Homeland Security.  He passed a background tests and was not doing anything illegal.  Plaintiff had dinner in testified that he did not have any drinks at the restaurant only dinner.  He maintained that he was the designated driver, followed the rules of the road by wearing his seat belt, giving proper turn signals, and following the rules of traffic. Officer had no right to stop plaintiff, there was no probable cause nor reasonable suspicion as determined by the Traffic

Court Judge and consequently the arresting officer did not understand the policies, he was charged with knowing.  Moreover, if Plaintiff gave an improper turn signal, there was no reason to arrest and tell him that was the basis for him to undergo a breathalyzer test when there was no indication of anything which would mandate such an action.  The policers never gave Plaintiff a field test, or a ticket before he went to the 78th Precinct.    Upon information and belief Defendant City of New York failed to use reasonable care in its training, supervision and retention over the individual police officers defendants and their supervisors.

41.    As a result of the conduct of Defendants, Plaintiff, Jamahl Bracey sustained, inter alia, emotional distress, embarrassment and humiliation, deprivation of state constitutional rights, punitive and special damages.

42.    All of the above and foregoing acts by the Defendants deprived plaintiff Jamahl Bracey of federally protected rights, including, but not limited to, the right:

> A. **Not to be deprived of liberty without due process of law in violation of the First, Fourth, Fifth, Sixth Amendment and Fourteenth Amendment of the Constitution of the United States;**
>
> B. **To be free from unreasonable seizure and arrest not based upon probable cause and reasonable suspicion;**
>
> C. **To be free from unwarranted and malicious traffic and criminal allegations and prosecution; false arrest and wrongful imprisonment.**
>
> D. **To be free from malicious abuse of process;**
>
> E. **Not to be denied Equal Protection Under the law;**

43.     As a result of the foregoing, Plaintiff **Jamahl Bracey** is entitled to compensatory damages against the Municipal Defendant in the sum of over $100,000.00 (one hundred thousand dollars) and punitive damages in the sum of over $1,000,000.00 (one million dollars) against all individual defendants and Municipal Defendant.

## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW MALICIOUS PROSECUTION AGAINST ALL DEFENDANTS

44.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45.     Defendants provided their superior police officers with false information at the 78th Precinct in an attempt to induce the combined arrest and prosecution of Plaintiff.

46.     Defendants importuned the Traffic Violations Bureau to prosecute Plaintiff **Jamahl Bracey** as of November 27, 2018, when he was tried for insufficient traffic signal.

47.     All Defendants were directly and actively involved in the initiation of traffic violation proceedings against Plaintiff **Jamahl Bracey.**

48.     Defendants knew or should have known that there was no probable cause to initiate an arrest of Plaintiff, or initiative proceedings against Plaintiff **Jamahl Bracey,** for anything.

49.     All Defendants were motivated by **actual malice** in initiating the traffic stop and forcing Plaintiff to take a breathalyzer test, proceedings against Plaintiff **Jamahl Bracey, especially once they learned he passed the breathalyzer test and had not previously given him a ticket.**

50.     Defendants Ruiz testified falsely before the New York City Traffic Violations Bureau.

51.     All Defendants withheld exculpatory evidence from the New York City Traffic Violations Bureau, and Plaintiff in the form of the results of Plaintiff's breathalyzer test results and memo books of Sergeant Thompson and the unknown Female Officer.

52.     Defendant Ruiz was directly and actively involved in the continuation of criminal traffic proceedings against Plaintiff **Jamahl Bracey.**

53.     All Defendants knew or should have known that there was no probable cause to urge the continuation of traffic proceedings against Plaintiff **Jamahl Bracey.**

54.     All Defendants were motivated by actual malice in urging the continuation of the breathalyzer proceedings against Plaintiff **Jamahl Bracey** when he was placed in custody and placed in the 78th precinct.

55.     Notwithstanding the Perjurious and fraudulent conduct of Defendants in the Traffic Court proceedings were terminated in Plaintiff Jamahl Bracey's favor on or about November 28, 2018, when all charges against him resulted in a traffic Court judge finding Plaintiff NOT GUILTY of all charges. (see exhibit 1)

**THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST ALL DEFENDANTS**

56.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "56" with the same force and effect as if fully set forth herein. Plaintiff was also not allowed the use of his car after he was arrested and forced Plaintiff's cousin Trenton Bracey to walk in the rain to the 78th precinct.

57.     The aforementioned conduct was extreme and outrageous, and exceeded all bounds of reasonable decency.

58.     The aforementioned conduct was negligent and cause severe emotional distress to Plaintiff **Jamahl Bracey** and continues the present time.

59.     The aforementioned conduct was committed by all defendants while acting within the scope of their employment.

60.     The aforementioned conduct was committed by all defendants while acting in furtherance of their employment with the New York City Police Department.

61.     As a result of the aforementioned conduct, Plaintiff **Jamahl Bracey** suffered severe emotional distress, mental anxiety, physical injury and loss of freedom, seizure, false arrest and false imprisonment, and is due damages, to be ascertained.


### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
### NEGLIGENT HIRING, SUPERVISION AND RETENTION
### AGAINST THE CITY OF NEW YORK

62. Upon information and belief, Defendants, the New York Police Department, and City of New York, failed to use reasonable care in the training and supervision of Defendants herein named and unnamed. There was no basis for stopping Plaintiff. Plaintiff wasn't given a ticket at the scene because no one told him why he was being stopped initially. Usually, people aren't arrested for failing to give an insufficient turn signal.

63. As a result of conduct of Defendants, Plaintiff **Jamahl Bracey** sustained, inter alia, emotional distress, embarrassment, and humiliation, deprivation of his constitutional rights, punitive and special damages.

64. As a result of the foregoing, Plaintiff **Jamahl Bracey** is entitled to compensatory damages against Defendants, New York Police Department and the City of New York, in a sum to be

determined, and is further entitled to punitive damages in the sum of $1,000,000.00 (one million dollars).[1]

## FIFTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE LAW
## (MALICIOUS PROSECUTION UNDER STATE LAW AGAINST ALL DEFENDANTS)

65.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "64" with the same force and effect as if fully set forth herein.

66.   By virtue of the foregoing, the Individual Defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, traffic proceedings against Plaintiff.

67.   The traffic proceedings terminated in Plaintiff's favor, by virtue of a NOT GUILTY verdict (November 28, 2018), on all counts and a finding of no probable cause for the stop, seizure or search.

68.   There was no probable cause for the commencement or the continuation of the traffic proceedings.

69.   The Defendants acted with actual malice by telling Plaintiff and his cousin that they would be "taised" if they didn't do what was asked of them, and because they were black.

70.   Defendant, City of New York are liable under the principle of *respondent superior* and conspiracy pursuant to §1983.

---

[1] The NYC Police Department has grappled with the "stops" of black men for no apparent reason except they must be doing something wrong because they are driving while black. They have settled these cases and still the conduct is seemingly ignored.

**PLAINTIFF'S SIXTH CAUSE OF ACTION**
**FALSE ARREST AND FALSE IMPRISONMENT**
**(Against All Defendants)**

71.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "70" as if fully set forth herein.

72.    As a result of the Plaintiff being cleared of all charges and being told that in the Traffic Court Decision resolved all decisions in his favor, Defendants are all liable under state action statute for False Arrest and False Imprisonment.

73.    Since there has been a determination by a Judicial Tribunal (Traffic Court), this Court should accept the facts as a true determination of what HAPPENED ON February 11, 2018 into February 12, 2018, by members of the New York Police Department.

74.    Plaintiff who is a citizen of the Commonwealth of Virginia, was in the process of driving back home with his cousin Trenton Bracey and a friend of Trenton's by the name of Dino LNU.

75.    After Plaintiff and his passengers got into the car sometime after 11:30pm of February 18, 2018 he signaled and turned right at the next corner and continued to drive straight. Still within the confines of New York.

76.    Plaintiff was asked to step out of the car, and Plaintiff asked what the problem was. The Officer then asked Plaintiff to take a Breathalyzer Test without making any suggestions that Plaintiff might be under the influence of alcohol or drugs. Officers Ruiz did not give Plaintiff a field sobriety test. He just handcuffed Plaintiff and placed Plaintiff under arrest and took him to the 78th Precinct.

77.    Plaintiff was placed in a holding cell in the back of the precinct. Plaintiff's car was driven back by one of the officers. The passengers who were licensed and could have driven Plaintiff's car to the precinct but was not allowed to do so and was forced to walk in the rain. When former Police Detective Trenton Bracey arrived at the Precinct, he spoke with the desk Sergeant, and

explained what happened. The Desk Sergeant Supervisor at the Precinct convinced Plaintiff's cousin to have Plaintiff take the test. Plaintiff's cousin spoke with Plaintiff and Plaintiff took the test under duress and passed.

78.    Plaintiff was not given the results of the test but was given a ticket and was told that he could leave. Plaintiff contested the ticket and was found not guilty after obtaining a lawyer and a trial.

79.    As a result, all defendants are responsible for Plaintiff's false arrest and false imprisonment, as there was no reason for Plaintiff's arrest and falsely imprisonment.

### SEVENTH CLAIM FOR RELIEF
**(*Monell*/42 U.S.C. § 1983: Claim Against Defendant City of New York
For the Actions of The City of New York, the named and unnamed Police Officers)**

80.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "79" as if fully set forth herein.

81.    The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by the conduct, chargeable to Defendant of the City of New York. Amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who was stopped, interviewed, and arrested without the benefit of Miranda Warnings and prosecuted in violation of the policies of the City of New York, the constitution of the State of New York and the Statutes and Constitution of the United States as well as relevant cause law. At all times Defendants were in uniform, acting under the color of Law, within the scope of their employment.

82.    Prior to Plaintiff's arrest, policymaking officials at the City of New York Police Department had with deliberate indifference to the constitutional rights of individuals suspected

or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

(a) The use of excessive promises of rewards and or unduly coercive interrogation techniques, that is, telling Plaintiff that he would "taize" him forcing Plaintiff to take a Breathalyzer test without any basis of suspicion or ……. with vulnerable potential witnesses and having individuals fearing prosecution and imprisonment having their otherwise law-abiding behavior turned upside down because of police racist intent.

(b) The determination of probable cause to make an arrest; and

*(c)* The continuing duty of police investigators to preserve and to make timely disclosure to the Police Department, during criminal investigation and prosecutions, of all material evidence or information ("*Brady* material") favorable to a person suspected, accused or convicted of criminal conduct, including but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witness has a motive, bias or interest affecting his credibility, or has been pressured or coerced, so that the Prosecutor or Police in this case could comply with their constitutional obligation to disclose such information to the defense under *Brady v. Maryland.* In this instance the Police never released the results of the breathalyzer, nor did they give over Sergeant Thomas memo book.

17

83.     With respect to "a" and "c" in the preceding paragraph, prior to Plaintiff's arrest and the initiation of his prosecution in 2018, the New York City Police Department provided questionable training.

84.     The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or "tolerated" by policymaking officials for the Defendant New York City Police Department, including but not limited to, the Police Commissioner or his precinct designee, who knew (or should have known):

> a)  to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;
>
> b)  that such cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and
>
> c)  that the wrong choice by such employees concerning such issues will frequently cause a deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

85.     The aforementioned policymaking officials had the knowledge and notice alleged in the preceding paragraph based upon other circumstances:

a) Civil lawsuits, some of which resulted in substantial civil settlements, credibly alleging that police had falsified, exaggerated, or withheld material evidence, or conducted searches or arrest without probable cause.

b) Numerous decisions of the United States Supreme Court, the United States Court of Appeal, and the New York Court of Appeals and Appellate Divisions, discuss the difficult issues that regularly arise under *Brady* as well as the probable cause requirement of the Fourth Amendment;

c) Judicial decisions directly criticizing other Urban police departments for failing to train and supervise officers in their *Brady* obligations and for failing to adopt adequate *Brady* disclosure policies, *see Carter v. Harrison*, 612 F. Supp.749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the Report and Recommendation of US District Court Judge, Shira A. Scheindlin), and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to provide truthful testimony and to disclose evidence that favors criminal defendants under *Brady, see Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992), and *Carter v. Harrison, supra;*

d) The inherent obviousness of the need to train, supervise and discipline police officers in such obligations to counteract the pressure on officers and the powerful incentives they have to close cases and to obtain arrests and convictions.

86.    Under the principles of municipal liability for federal civil rights violations, the City Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the

interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of *Brady* material.

87.    The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitute a City policymaker for whom the city is liable, with respect to compliance by New York City Police Department employees with the above-mentioned constitutional requirements.

88.    During all time material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the Public.

89.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City of New York and the named and unnamed police officers were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

90.    By virtue of the Foregoing, Defendant City of New York, is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries and failed to do anything about it. Specifically, the three "3" officers never said anything about an "insufficient turn", it was you have to take a Breathalyzer test without, any reason. Instead of letting the car be driven by former Police officer Bracey, the police drove the car to the 78th Precinct and left the other two individuals to walk in the rain.

91.    The policy permits, encourages, or acquiesces the commission of, constitutional violations of the rights of suspects and defendants by Police. The policy led directly to the

violations of Plaintiff's constitutional rights before and during his trial, and the subsequent cover-up of police wrongdoing, which greatly prolonged Plaintiff's wrongful imprisonment and other damages.

92.     More specifically, it was the police of the City of New York to directly encourage, or be indifferent to and thereby indirectly encourage, Police, investigators, and the New York City Police Department. The above law enforcement officials would use the following illegal tactics to coerce witnesses.

93.     In this regard, the three officers on the scene were permitted to refrain from making a record that Plaintiff had passed breathalyzer test, and no real reason for the stop. Moreover, the City of New York entered into a settlement agreement with numerous of individuals mostly minorities who were stopped and or searched solely based on their race. These cases highly publicized were settled by Mayor Bill DeBlasio.

94.     By virtue of the foregoing, Defendant City of New York (Police Department) is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his resultant injuries.

### EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
### MALICIOUS PROSECUTION
### AGAINST ALL DEFENDANTS

95.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "94" with the same force and effect as if fully set forth herein.

96.     Defendants provided the Traffic Violation Bureau Judges with false information in an attempt to induce the conviction of Plaintiff **Jamahl Bracey.** Defendants importuned the Traffic Violations Bureau to prosecute Plaintiff **Jamahl Bracey** as of  2/11/2018 or 2/12/2018, when he received the charges against him. (See exhibit 2)

97 .     All Defendants were directly and actively involved in the initiation of the traffic proceedings against Plaintiff **Jamahl Bracey.** Defendants knew or should have known there were no probable cause to initiate traffic violation proceedings against Plaintiff **Jamahl Bracey,** especially after he passed a Breathalyzer test.

98.     All Defendants were motivated by actual malice in initiating criminal proceedings against Plaintiff **Jamahl Bracey.**

99.     The aforementioned conduct was negligent, outrageous and malicious and caused severe emotional distress to Plaintiff **Jamahl Bracey.** Imagine being arrested, taken to the Police station for a breathalyzer test, passing the test, then being given a ticket for something completely unrelated to why Plaintiff was stopped.

100.     The aforementioned conduct was committed by all Defendants while acting within the scope of their employment.

101.     The aforementioned conduct was committed by all Defendants while acting in furtherance of their employment with the City of New York City Department with malice.

102.     As a result of the aforementioned conduct, Plaintiff **Jamahl Bracey** suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

103.     As a result of the conduct of the Defendants, Plaintiff **Jamahl Bracey** sustained, inter alia, emotional distress, embarrassment, and humiliation, deprivation of his constitutional rights, and other delineated rights, punitive and special damages.

104.     As a result of the foregoing, Plaintiff **Jamahl Bracey** is entitled to compensatory damages against defendants, City of New York, and is further entitled to punitive damages in the

sum of $1, 000,000.00 (one million dollars) for the conduct of the two named and one unnamed individual officer.

WHEREFORE, Plaintiff demands judgment against the municipal Defendant in the sum of over $1,000, 000 (one million dollars) in compensatory and punitive damages, and further demands judgment against Defendants Police Officer Jonathan Ruiz, Sgt. Thompson, and one unnamed female police officer in the sum to be determined in punitive damages, plus reasonable attorney's fees.

Dated: New York, New York
        February 11, 2021

*pamela hayes*

Pamela D. Hayes, Esq., (PH 2737)
200 57th Street, Suite 501
New York, New York 10019
Tel: (212) 687-8724/ (917) 216-6873
Fax: (212) 956-9891
Email: pamhayes7777@gmail.com

TO:    Clerk, United States District Court, SDNY
       All Attorney for Defendants
       Corporation Counsel for the City of New York
       Department of Law